AO 243 (Rev. 01/15)                                                                                    Page 2

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District | Eastern District of Pennsylvania (Philadelphia) |
|---|---|---|

| Name *(under which you were convicted)*: Khalif Hunter | | Docket or Case No.: 2:17-cr-00121-GEKP-4 |
|---|---|---|
| Place of Confinement: FCI Petersburg Medium | Prisoner No.: 75913-066 | |
| UNITED STATES OF AMERICA | V. | Movant *(include name under which convicted)* KHALIF HUNTER |

## MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

   United States District Court
   Eastern District of Pennsylvania
   Philadelphia Division

   (b) Criminal docket or case number (if you know):  2:17-cr-00121-GEKP-4

2. (a) Date of the judgment of conviction (if you know):  4/30/2019

   (b) Date of sentencing:  4/30/2019

3. Length of sentence:  84 months + 1 day

4. Nature of crime (all counts):

   Count 1s: Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a);
   Count 2s: Attempt Commit Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; and
   Count 3s: Carrying and Using a Firearm During a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.

5. (a) What was your plea?  (Check one)
   (1) Not guilty ☐        (2) Guilty ☑        (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or what did you plead guilty to and what did you plead not guilty to?

   Guilty on Counts 1s-3s of the Superseding Indictment.

6. If you went to trial, what kind of trial did you have?  (Check one)   Jury ☐   Judge only ☑

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?   Yes ☐   No ☑

8. Did you appeal from the judgment of conviction?   Yes ☐   No ☑

AO 243 (Rev. 01/15)                                                                                                  Page 3

9.   If you did appeal, answer the following:

  (a)  Name of court: _____

  (b)  Docket or case number (if you know): _____

  (c)  Result: _____

  (d)  Date of result (if you know): _____

  (e)  Citation to the case (if you know): _____

  (f)  Grounds raised:




  (g)  Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐     No ☐

      If "Yes," answer the following:

    (1) Docket or case number (if you know): _____

    (2) Result: _____


    (3) Date of result (if you know): _____

    (4) Citation to the case (if you know): _____

    (5) Grounds raised:




10.  Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
      Yes ☐     No ☐

11.  If your answer to Question 10 was "Yes," give the following information:

  (a)  (1) Name of court: _____

      (2) Docket or case number (if you know): _____

      (3) Date of filing (if you know): _____

    (4)  Nature of the proceeding: _____

    (5)  Grounds raised: _____

AO 243 (Rev. 01/15)

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

     Yes ☐     No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: _____

(2) Docket of case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

     Yes ☐     No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:    Yes ☐    No ☐

(2) Second petition:   Yes ☐    No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:** Hunter's § 924(c) conviction must be vacated for resentencing because the underlying predicate offense of "Hobbs Act Conspiracy" no longer categorically qualifies as a "crime of violence".

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

in light of United States v. Davis, 139 S. Ct. 2319 (2019), Hunter's § 924(c) conviction must be vacated for resentencing because the underlying predicate offense of "Hobbs Act Conspiracy" no longer categorically qualifies as a "crime of violence".

Please See Memorandum of Law in Support.

(b) **Direct Appeal of Ground One:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐    No ☐

    (2)  If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐    No ☐

    (2)  If you answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3)  Did you receive a hearing on your motion, petition, or application?

        Yes ☐    No ☐

    (4)  Did you appeal from the denial of your motion, petition, or application?

        Yes ☐    No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐    No ☐

AO 243 (Rev. 01/15)

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

N/A

**GROUND TWO:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐         No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐         No ☐

AO 243 (Rev. 01/15)

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)   Did you receive a hearing on your motion, petition, or application?

      Yes ☐     No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

      Yes ☐     No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

      Yes ☐     No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:


**GROUND THREE:** _____

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

AO 243 (Rev. 01/15)

**(b)  Direct Appeal of Ground Three:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐        No ☐

(2)  If you did not raise this issue in your direct appeal, explain why:


**(c)  Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐        No ☐

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐        No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐        No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐        No ☐


(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:** _____

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes [ ]      No [ ]

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes [ ]      No [ ]

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

AO 243 (Rev. 01/15)

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13.   Is there any ground in this motion that you have <u>not</u> previously presented in some federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

14.   Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?        Yes ☐        No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

AO 243 (Rev. 01/15)                                                                                    Page 11

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the
      you are challenging:

     (a)  At the preliminary hearing:
     Robert Gamburg, 1500 John F. Kennedy Blvd., Suite 1203, Philadelphia, PA 19102

     (b)  At the arraignment and plea:
     Robert Gamburg, 1500 John F. Kennedy Blvd., Suite 1203, Philadelphia, PA 19102

     (c)  At the trial:
     Robert Gamburg, 1500 John F. Kennedy Blvd., Suite 1203, Philadelphia, PA 19102

     (d)  At sentencing:
     Robert Gamburg, 1500 John F. Kennedy Blvd., Suite 1203, Philadelphia, PA 19102

     (e)  On appeal:
     N/A

     (f)  In any post-conviction proceeding:
     N/A

     (g)  On appeal from any ruling against you in a post-conviction proceeding:

     N/A

16.  Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court
      and at the same time?          Yes ☐          No ☑

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are
      challenging?          Yes ☐          No ☑

     (a)  If so, give name and location of court that imposed the other sentence you will serve in the future:


     (b)  Give the date the other sentence was imposed: _____

     (c)  Give the length of the other sentence: _____

     (d)  Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or
     sentence to be served in the future?          Yes ☐          No ☑

18.  TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain
      why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

     Section 2255(f)(3), provides that the one-year limitations period begins to run from "the date on which the right
     asserted was initially recognized by the Supreme Court (Davis), if that right has been newly recognized by the
     Supreme Court and made retroactively applicable to cases on collateral review.

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of –

(1)   the date on which the judgment of conviction became final;

(2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, Hunter respectfully requests that the Court grant the following relief:

  Vacate his conviction and sentence to start anew; alternatively, grant an Evidentiary hearing to further prove his grounds set forth above, resolve facts in dispute, expand an incomplete record or any other relief to which this Court deems that he may be entitled.

          Respectfully submitted,

          _____

          KHALIF HUNTER
          REG. NO. 75913-066
          FCI PETERSBURG MEDIUM
          FEDERAL CORR. INSTITUTION
          P.O. BOX 1000
          PETERSBURG, VA  23804
          Appearing *Pro Se*

## DECLARATION OF KHALIF HUNTER

  I, Khalif Hunter, declarant herein, declare and attest to the facts in the above and foregoing Motion under 28 U.S.C. § 2255(f)(3) to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody to be true and correct to the best of my knowledge under the penalty of perjury pursuant to 28 U.S.C. § 1746. I placed this § 2255 Motion in the prison mailbox on the date below invoking the prison mailbox rule. See *Houston v. Lack*, 487 U.S. 266, 270 (1988).

Dated: June 15, 2020.      _____

          KHALIF HUNTER

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KHALIF HUNTER, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Cv No. 2:20-cv-_____ |
| | ) | Cr No. 2:17-cr-00121-GEKP-4 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255(f)(3) TO VACATE, SET-ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, KHALIF HUNTER ("Hunter"), appearing *pro se,* and in support of this memorandum would show as follows:

### I. JURISDICTION

Jurisdiction is vested in this Court under 28 U.S.C. § 2255(f)(3). Under 28 U.S.C. § 2255, federal prisoners "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States" [may move the district] "court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Section 2255(f) sets forth the one- year statute of limitations for a motion under this section to, in relevant part, "run from the latest of --(1) the date on which the judgment of conviction becomes final; . . . [or]

1

(3) the date on which the right asserted was initially recognized by the Supreme

Court, if that right has been newly recognized by the Supreme Court and made

retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f). Section

2255(f)(3), however, provides that the one-year limitations period begins to run from

"the date on which the right asserted was initially recognized by the Supreme Court,

if that right has been newly recognized by the Supreme Court and made retroactively

applicable to cases on collateral review." 28 U.S.C. §2255(f)(3). See *United*

*Dodd v. United States*, 545 U.S. 353, 357-58 (2005).

## II. STATEMENT OF THE GROUND FOR RELIEF

Whether in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), Hunter's §

924(c) conviction must be vacated for resentencing because the underlying predicate

offense of "Hobbs Act Conspiracy" no longer categorically qualifies as a "crime of

violence".

## III. STATEMENT OF THE CASE

### A.    Procedural Background

On August 30, 2017, a grand jury sitting in the United States District Court for

the Eastern District of Pennsylvania, Philadelphia Division, returned a three (3) Count

Superseding Indictment charging Hunter and three other Co-Conspirators. See Doc.

wire, exited the apartment, and met with Philadelphia Police officers who responded to the scene.

Video from surveillance cameras on the premises of the apartment complex showed much of the events of the robbery in the parking lot, the stairwell leading to Apartment 209 and in the area of Apartment 208. In addition, video showed the defendants entering a burgundy GMC van after the robbery.

On September 29, 2016, Philadelphia Police officers found Broady and Hunter inside of that van. Officers recovered a cellular phone and Pennsylvania ID card from Broady. Officers later executed a search warrant on the van, and recovered a black iPhone near where Hunter was laying; as well as numerous packets of crack cocaine and paraphernalia for drug distribution. The iPhone found near Hunter had a telephone number of 215-520-6211, which was the same number that Settles was communicating with in intercepted calls with Hunter in preparation for and during the robbery.

Law enforcement also executed search warrants on properties related to the defendants, including a search of 6022 Cedar Street, Apartment 1, Philadelphia (the residence of Settles' girlfriend), and recovered a number of firearms and ammunition. In addition, officers recovered a black Converse All-Star T-shirt, which was the same shirt that Settles was seen wearing during the robbery.

2.    Plea Proceeding

On January 14, 2019, a a Change of Plea Hearing was held before Honorable Gene E. K. Pratter. See Doc. 163. Hunter pled guilty to Counts 1s through 3s of the Superseding Indictment pursuant to a Plea Document. See Doc. 164.

3.    Sentencing Proceeding

On April 13, 2017, a Sentencing Hearing was held before Honorable Gene E. K. Pratter. See Doc. 189. At sentencing, the Court sentenced Hunter to a term of 1 day on Counts 1s and 2s; and 84 months on Count 3s, to run consecutive to Counts 1s and 2s. See Doc. 190 at 2. Upon release from imprisonment, Hunter shall be on supervised release for a term of 3 years as to Counts 1s and 2s; and 5 years as to Count 3s, all such terms to run concurrently. *Id.* at 3. The Court ordered Hunter to pay a $300 special assessment. *Id.* at 6. No direct appeal was filed in this case.

## V. **DISCUSSION**

As a preliminary matter, Hunter respectfully requests that this Court be mindful that *pro se* complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and should therefore be liberally construed. See *Higgs v. Attorney Gen. of The United States*, 655 F.3d 333 (3rd Cir. 2011); *Estelle v. Gamble*, 429 U.S. 97 (1976)(same); and *Haines v. Kerner*, 404 U.S. 519 (1972) (same).

**In Light of _United States v. Davis_, 139 S. Ct. 2319 (2019), Hunter's § 924(c) Conviction Must Be Vacated for Resentencing Because the Underlying Predicate Offense of "Hobbs Act Conspiracy" No Longer Categorically Qualifies as a "Crime of Violence".**

In this case, Hunter's sentence enhancement is no longer valid due to a change of law– the existence of a new retroactive rule of law in _United States v. Davis_, 139 S. Ct. 2319, 2336 (2019). Due to this retroactive change of the law, his sentence now presents an error sufficiently grave to be deemed as a fundamental defect.

Here, Hunter's sentence was driven by his sentencing enhancement under 18 U.S.C. § 924(c). This enhancement virtually increased his sentence. As such, because he is actually innocent of said enhancement, he should be resentenced to a significantly less harsh sentence.

_Dimaya_ and _Davis_ are both new interpretations of statutory law. Courts have disagreed on whether the unconstitutionality of § 924(c)(3)(B) is a right "newly recognized by the Supreme Court," as well as whether that right has been made retroactively applicable. Under _Johnson v. United States_, 135 S. Ct. 2551 (2015), several courts, including the Fourth, Sixth and Tenth Circuits, ruled that the Supreme Court had not created a new right on which the movants appealing convictions unrelated to the ACCA could rely.

In _In Re: Hammoud_, the Eleventh Circuit of Appeals held that: because the

7

Supreme Court in *Davis* did not expressly state that its holding in that case applies retroactively to cases on collateral review, we consider whether the retroactivity of Davis's new rule is "necessarily dictate[d]" by the holdings of multiple cases, see *id.* at 666, 121 S. Ct. at 2484, and we conclude that it is. As noted above, the Supreme Court held in *Welch* that *Johnson* announced a new substantive rule. See *Welch*, 136 S. Ct. at 1264-65, 1268. Specifically, the *Welch* Court determined that the new constitutional rule announced in *Johnson* was substantive because, by striking down the ACCA's residual clause, *Johnson* substantively altered the range of conduct or the class of persons the ACCA could punish. *Id.* As such, the Court determined that *Johnson*'s new rule fell within *Teague*'s first exception and, so, was retroactive. See *id.* at __, __, 136 S. Ct. 1264-65, 1268. Since the Supreme Court's decision in *Welch*, this Court has recognized that federal prisoners who can make a prima facie showing that they were previously sentenced in reliance on the ACCA's now-voided residual clause are entitled to file a second or successive § 2255 motion. *In re Thomas*, 823 F.3d 1345, 1348 (11th Cir. 2016).

Here, Count 1s' conspiracy to commit Hobbs Act robbery conviction is not a "crime of violence." See *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), holding that § 924(c)(3)(B) is unconstitutionally vague. The Court refers to this clause as the "risk-of-force clause."

According to *Johnson*, "[t]wo features of the residual clause conspire to make

8

it unconstitutionally vague."

The first feature is what is called the "ordinary case" analysis required under ACCA: in order to determine whether a given crime is a "violent felony," a court has to disregard the facts of the specific case before it, and consider only the "ordinary," or typical, case of the crime that the defendant was convicted of. For example, if a defendant was convicted of obstruction of justice, and his actual conduct involved stabbing a witness to death, the court cannot rule that the defendant committed a "violent felony" merely because this particular case involved a stabbing. Instead, the court is required to decide whether a "typical" obstruction of justice crime involves stabbing, or some other conduct with a "serious potential risk of physical injury." The reverse is also true: just because a defendant happened to commit a crime in a peaceful and non-violent manner in a case does not affect the court's decision on whether the crime is a "violent felony." In all cases, the court can only consider whether the "typical" or "ordinary" case of the crime meets the "serious potential risk of physical injury" standard.

ACCA's second problematic feature is the uncertainty about how much risk is enough for a crime to count as a "serious potential risk." Even if data about an "ordinary case" is available, it is not at all clear if a crime that has, say, a 10% chance of causing permanent disfigurement in a victim is a "serious potential risk for

physical injury." What about a crime with a 1% chance for death? And would this crime have a greater or lesser potential risk for physical injury than the crime with the 10% chance of permanent disfigurement? Although it is not uncommon for the law to sometimes rely on imprecise standards to judge real-world facts (consider, for example, imprecise standards like "reasonable person," or "material fact"), ACCA pairs an imprecise standard with a judicially imagined "ordinary case." That pairing, according to the Supreme Court, is what renders ACCA unconstitutionally vague.

### *Johnson's Impact on "Crime of Violence" Definition Under 924(c)*

ACCA defines "violent felony," and *Johnson* held that part of the definition is unconstitutional. In federal criminal law, there is a very important and similar-sounding term called "crime of violence," that frequently appears in rules and statutes, including 18 U.S.C. § 924(c).

18 U.S.C. § 924(c) creates a substantive offense for possessing or using a firearm during, or in furtherance of, a "crime of violence." The statute defines "crime of violence" as an offense that either: (1) has as an element the use, attempted use, or threatened use of physical force; or (2) is a felony that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The § 924(c) definition of "crime of violence" is copied verbatim from 18 U.S.C. § 16, which provides the general

10

definition for "crime of violence" under federal law.

The parallels between "violent felony" and "crime of violence" are immediately apparent.

- First, because the residual clause defining "crime of violence" begins with the phrase: "by its nature," it tells us that deciding whether a given crime is a "crime of violence" under § 924(c) must use the "ordinary case" method, just like with ACCA.

- Second, because the residual clause defining "crime of violence" asks us to look at whether there is a "substantial risk that physical force…may be used," this is no more precise than the "serious potential risk of physical injury" standard under ACCA.

In other words, in order for a judge to decide whether a crime is a "crime of violence" under § 924(c), the judge needs to use an "ordinary case" analysis and apply an imprecise standard. That sounds just like the problems highlighted by *Johnson*, that rendered ACCA's definition of "violent felony" unconstitutionally vague.

- In *United States v. Gonzalez-Longoria*, 813 F.3d 225 (5th Cir. 2016). A panel of the Fifth Circuit rejected all of the Government's arguments and held that 18 U.S.C. § 16(b) is unconstitutionally vague. That opinion has been vacated pending an *en banc*.

- In *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2016). The Seventh Circuit has held that 18 U.S.C. §16(b) is unconstitutionally vague. In rejecting the government's arguments, the Seventh Circuit reasoned that the "confusing list" of enumerated offenses and the history of circuit splits under

11

ACCA were not essential to the outcome in *Johnson*.

To determine when "a predicate offense qualifies as a 'crime of violence' under § 924(c), courts use a categorical approach looking only under{2018 U.S. Dist. LEXIS 8} to the statutory elements and not to particular facts underlying the offense." See *Descamps v. United States*, 570 U.S. 254 (2013). "To prove ... Hobbs Act conspiracy, the government must establish that two or more persons agreed to commit an unlawful act, and that the defendant knowingly and intentionally joined in the agreement." *United States v. Haynes*, 582 F.3d 686,698 (7th Cir. 2009), abrogated on other grounds by *United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012).

Neither of the elements of Hobbs Act conspiracy requires the conspirator to use, attempt, or threaten the use of physical force. Thus, Hobbs Act conspiracy does not categorically qualify as a crime of violence under § 924(c)'s force clause and cannot therefore constitute a crime of violence under § 924(c)(3)(A).

Courts use the categorical approach to interpret both statutes. Compare, *e.g.*, *Dimaya*, 138 S. Ct. at 1211 (applying categorical approach to § 16(b)) with *United States v. Hill*, 832 F.3d 135, 139 (2d Cir. 2016) (applying categorical approach to § 924(c)(3)(B)); *United States v. Ivezaj*, 568 F.3d 88, 95-96 (2d Cir. 2009)(same); *Acosta*, 470 F.3d at 135-36 (same). See also, *United States v. Davis*, 139 S. Ct. 2319,

2336 (2019)[2].

In light of *Davis*, Hunter's conviction for possessing a firearm during a crime of violence, see 18 U.S.C. § 924(c)—i.e., 18 U.S.C. § 1951 – Hobbs Act Conspiracy, must be vacated because § 924(c)(3)(B) is unconstitutionally vague. The Fifth Amendment's proscription against depriving an individual of life, liberty, or property without due process of law supplies the rationale for the void-for-vagueness doctrine. Under it, the government may not impose sanctions "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Welch v. United States*, 136 S. Ct. 1257, 1262 (2016)(quoting *Johnson*, 135 S. Ct. at 2556).

In determining whether an offense is a "crime of violence" under § 924(c), we employ the categorical approach, asking whether the minimum criminal conduct necessary for conviction under the applicable statute—as opposed to the specific underlying conduct at issue—amounts to a crime of violence as defined in subsection (A) or (B). See, e.g., *Taylor v. United States*, 495 U.S. 575, 600 (1990); see also, *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (outlining categorical approach

---

[2]

It is essential to note that at least three federal circuit appellate Courts have declared *Davis* retroactive. See *In re Matthews*, (No. 16-2027) (3d Cir. Aug. 14, 2019); *United States v. Bowen*, (No. 17-1011) (10th Cir. September 3, 2019); and *In re Hammoud*, (No. 19-12458-G) (11th Cir. July 23, 2019).

as applied to prior conviction under ACCA).

Classifying crimes, especially by assessment of risk of force and violence, is built into the criminal justice system. For example, 18 U.S.C. § 924(c), which provides for enhanced penalties for the use of a firearm in connection with a crime, contains the same definition of "crime of violence" as 18 U.S.C. § 16(b). See 18 U.S.C. § 924(c)(3)(B).

Section 924(c) creates a substantive offense for possessing or using a firearm during, or in furtherance of, a "crime of violence." The statute defines "crime of violence" as an offense that either: (1) has as an element the use, attempted use, or threatened use of physical force; or (2) is a felony that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

In this case, Hunter's sentence for carrying/using a weapon during a crime of violence, in violation of 18 U.S.C. § 924(c), is now unconstitutionally imposed where the factual basis of the guilty plea is now insufficient because the charged predicate offense of Hobbs Act conspiracy is not categorically a crime of violence under either the use-of-force clause or the residual clause of 18 U.S.C. § 924(c)(3).

At issue in this § 2255 is whether conspiracy to commit Hobbs Act robbery qualifies as a crime of violence under § 924(c), including whether the residual clause

14

of § 924(c)(3)(B) is unconstitutionally vague under *Davis*, whether the factual basis of the conviction is sufficient for Hunter's § 924(c) sentences. This Court previously had held that attempted Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c)(3). See *United States v. Hill*, 832 F.3d 135 (2nd Cir. 2016). As such, as shown below, this Court should overrule *Hill* in light of *Davis*, where the Supreme Court struck down the residual clause in 18 U.S.C. § 924(c)(3) as unconstitutionally vague.

Hunter pled guilty on Counts 1s through 3s of the Superseding Indictment, under 18 U.S.C. §§ 1951(a) and 924(c), which provides enhanced punishment for any person who discharges a firearm "during and in relation to any crime of violence" that is itself a violation of federal law. Under this statute, a "crime of violence" is defined as a felony that either: (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the "use-of-force clause"); or (B) "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause"). 18 U.S.C. § 924(c)(3)(A) & (B). In the instant case, the charged predicate offense is conspiracy to commit Hobbs Act robbery under 18 U.S.C. § 1951.

In light of *Davis*, Hobbs Act conspiracy no longer qualifies as a crime of violence under either the use-of-force clause or the residual clause of § 924(c)(3).

15

Hobbs Act conspiracy categorically fails to qualify as a crime of violence under the use-of-force clause because it can be committed without physical force or the threatened deployment of the same and because it can be accomplished by mere "intimidation," which does not require the intentional use or threat of use of violent physical force for two reasons. First, this Court's precedent establishes that intimidation is the threatened infliction of bodily injury, which is not equivalent to the threatened use of force. Second, precedent requires that a use or threat of use of force be intentional, but intimidation may occur even if the defendant did not intend to make a threat. And robbery cannot qualify as a "crime of violence" under § 924(c)(3)'s residual clause, because, under the reasoning of *Davis* that clause is void for vagueness under the Due Process Clause of the Fifth Amendment.

In interpreting a communication of threats statute, the Supreme Court recently defined "threat" to mean that the defendant must intend to put another in fear of injury with his words or actions. See *Elanis v. United States*, 135 S. Ct. 2001 (2015). The federal robbery "intimidation" element falls far short of this definition because "intimidation" is satisfied under the robbery statute "whether or not the defendant actually intended the intimidation", as long as "an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts." *Woodrup*, 86 F.3d at 364. Due to the lack of intent, federal robbery criminalizes a

16

wide range of conduct that does not constitute a "threat".

In *Bazan-Reyes v. INS*, 256 F.3d 600, 609 (7th Cir. 2001), the Court held that an offense can constitute a crime of violence under the force clause of 18 U.S.C. §16(a) only if an element requires the defendant to intentionally use force. The same requirement applies to threats of force. This rationale is entirely consistent with the Supreme Court's holding that a *mens rea* greater than negligence is required for communication to constitute a "threat to injure the person of another" under 18 U.S.C. § 875(c). *Elonis*, 135 S. Ct. at 2011-12.

Plainly, the "intimidation" element of robbery is missing the intentional *mens rea* required by *Elonis* and *Bazan-Reyes*. "Intimidation" is satisfied under the robbery statute "when a bank robber's words and actions would cause an ordinary person to feel threatened." *United States v. Gordon*, 642 F.3d 596, 598 (7th Cir. 2011). In other words, a defendant may be convicted of robbery even if he did not intend to put another in fear of injury. It is enough that the victim reasonably fears injury from the defendant's actions. Due to the lack of requisite intent, robbery criminalizes conduct that does not require an intentional threat of physical force. Therefore, robbery fails to qualify as a crime of violence under *Elonis* and *Bazan-Reyes*.

Because Hobbs Act conspiracy is not a qualifying "crime of violence" predicate, the factual basis of the guilty plea admits to conduct that legally does not

17

satisfy every element of the charged statute. A guilty conviction to a non-existent offense obviously affected both Hunter's substantial rights, as well as the fairness, integrity, or public reputation of the proceedings.

In *Davis*, Respondents Maurice Davis and Andre Glover were charged with multiple counts of Hobbs Act robbery and one count of conspiracy to commit Hobbs Act robbery. They were also charged under 18 U. S. C. § 924(c), which authorizes heightened criminal penalties for using, carrying, or possessing a firearm in connection with any federal "crime of violence or drug trafficking crime." §924(c)(1)(A). "Crime of violence" is defined in two subparts: the elements clause, §924(c)(3)(A), and the residual clause, §924(c)(3)(B). The residual clause in turn defines a "crime of violence" as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* A jury convicted the men on most of the underlying charges and on two separate § 924(c) charges for brandishing a firearm in connection with their crimes. The Fifth Circuit initially rejected their argument that § 924(c)'s residual clause is unconstitutionally vague, but on remand in light of *Sessions v. Dimaya*, the Court reversed course and held § 924(c)(3)(B) unconstitutional. It then held that Mr. Davis' and Mr. Glover' convictions on the § 924(c) count charging Hobbs Act robbery as the predicate crime of violence could be sustained under the

18

elements clause, but that the other count—which charged conspiracy as a predicate crime of violence—could not be upheld because it depended on the residual clause.

The lower courts have long held § 924(c)(3)(B) to require the same categorical approach. After the Eleventh Circuit's decision in *Ovalles*, the government advanced the argument everywhere that for § 924(c)(3)(B), courts should abandon the traditional categorical approach and use instead a case-specific approach that would look at the defendant's actual conduct in the predicate crime. The Supreme Court rejected that, holding that while the case-specific approach would avoid the vagueness problems that doomed the statutes in *Johnson* and *Dimaya* and would not yield to the same practical and Sixth Amendment complications that a case-specific approach under the ACCA and § 16(b) would, "this approach finds no support in § 924(c)'s text, context, and history."

The vagueness doctrine rests on the twin constitutional pillars of due process and separation of powers. Having applied the doctrine in two cases involving statutes that "bear more than a passing resemblance to § 924(c)(3)(B)'s residual clause" – those being *Johnson v. United States* (Armed Career Criminal Act residual clause unconstitutional) and *Sessions v. Dimaya* (18 U.S.C. § 16(b)) residual clause unconstitutional) – the Court completed its frolic through the residual clauses in the criminal code.

19

Courts use the "categorical approach" to determine whether an offense qualified as a violent felony or crime of violence. Judges had to disregard how the defendant actually committed the offense and instead imagine the degree of risk that would attend the idealized "'ordinary case'" of the offense.

The government campaign came to a head in *Davis*, a Fifth Circuit case in which the appellate court said that conspiracy to commit a violent crime was not a crime of violence, because it depended on the § 924(c)(3)(B) residual clause.

In sum, in *Davis*, *Johnson* and *Dimaya*, the Supreme Court ruled that the statute is unconstitutionally broad the way it defines a crime of violence.

*Davis* is substantially relevant in regard to Hunter's arguments, making clear indication that the interpretation of statutes by district courts are contrary to the Congress' intent. Further, the statutes are too ambiguous to secure a conviction. The same applies to Hunter's circumstance.

Finally, Hunter asserts that the increase in the calculation of his sentencing range based on the § 924(c) conviction, resulted in a longer sentence. If so, this could be deemed a miscarriage of justice.

20

## VI. CONCLUSION

For the above and foregoing reasons, Hunter's sentence must be vacated for

resentencing without the § 924(c) consecutive sentence.

Respectfully submitted,

Dated: June 15, 2020.

KHALIF HUNTER
REG. NO. 75913-066
FCI PETERSBURG MEDIUM
FEDERAL CORR. INSTITUTION
P.O. BOX 1000
PETERSBURG, VA 23804
Appearing *Pro Se*

21

**P**



U.S. POSTAGE
**$7.75**
PM 2-DAY
77070  0006
Date of sale
06/16/20
06      2S
2SSK
11488079

## PRIORITY MAIL 2-DAY®

EXPECTED DELIVERY DAY: 06/19/20          **0006**

C019

SHIP
TO:

**601 MARKET ST**
**RM 2609**
**PHILADELPHIA PA 19106-1732**

### USPS TRACKING® NUMBER



9505 5066 3896 0168 2799 08

EP14F Oct 2018
OD: 12 1/2 x 9 1/2



USPS.COM/PICKUP

KHALIF HUNTER
REG. NO. 75913-066
FCI PETERSBURG MEDIUM
FEDERAL CORR. INSTITUTION
P.O. BOX 1000
PETERSBURG, VA  23804

TO:   Ms. Kate Barkman
      Clerk of Court
      U.S. District Court
      Eastern District of Pennsylvania
      Philadelphia Division
      601 Market Street, Room 2609
      Philadelphia, PA 19106-1729

Open in prisoner Room

U.S.M.S.
X-RAY

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments.
Misuse may be a violation of federal law. This packaging is not for resale. EPI4F © U.S. Postal Service; October 2018; All rights reserved.

the maximum weight is 70 lbs. For international shipments, the maximum weight is 4 lbs.